543 P.2d 802

STATE of Arizona ex rel. ARIZONA CORPORATION COMMISSION, and its members in their representative capacity, Al Faron, Ernest Garfield, and B. L. "Bud" Tims, Claude Keller, Director of Securities Division, Arizona Corporation Commission, in his representative capacity, Appellants,

v.

BIONOMICS INTERNATIONAL, LTD., an Arizona Corporation, Appellee.

No. I CA–CIV 3091.

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 16, 1975.

Rehearing Denied Jan. 13, 1976.

Review Denied Feb. 3, 1976.

and when plaintiff's motion to file an amended complaint would be granted.

Bruce E. Babbitt, Atty. Gen. by Gary L. Sheets, Asst. Atty. Gen., Phoenix, for appellants.

Daggett & Ullman by James A. Ullman, T. Michael Daggett, Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

This appeal requires a determination of whether the Arizona Corporation Commission has the power to order the release of impounded funds paid by buyers of speculative stock back to those buyers.

The facts giving rise to this action are not in dispute. Prior to June 4, 1973, appellee, Bionomics, filed with the appellant, the Arizona State Corporation Commission (Commission), a request to register and sell 600,000 shares of its common stock at $2.50 per share. Upon investigation, the Commission determined that the stock sought to be registered and sold was "speculative" in nature within the definition of A.R.S. § 44–1878(B), that is, that the issue was "one in which the business or earnings of the issuer is based upon future developments and potentials rather than on current tangible assets." There is no contention by Bionomics that the Commission improperly classified the issue sought to be registered as speculative.

On June 4, 1973, the Commission issued its order allowing sale of the issue, but required impounding of the proceeds of the sale of such stock. The duration of the offering was not to exceed one year. The order further provided:

"The registrant agrees to accept, and by completion of the arrangements described in paragraph one above shall be deemed to have accepted, the conditions herein provided, and shall hold the Commission, director, and the depository, in-

dividually or collectively, free from any liability in the event that the proceeds deposited shall be ordered by the Commission to be distributed ratably among the contributing purchasers or subscribers by reason of failure of the registrant to accumulate sufficient funds to achieve its declared objective as of record with the Commission, or by reason of the suspension, revocation or expiration of the registration of these securities."

The Arizona Bank was selected as the depository for the impounds. Subsequently, on November 22, 1973, Bionomics ceased trading in its stock and within the time frame set by the Commission for the sale sold only $209,355 of the $1,500,000 issue. Thereafter, on December 24, 1974, the Commission unilaterally issued its order which is the subject matter of this appeal. This order permitted shareholders of Bionomics at their election and upon surrender of their stock certificates, to obtain a pro rata refund of the $149,221.97 [1] which then remained in impound. Stockholders representing 84% of the funds in impound requested refunds.

Bionomics then instituted this action in Maricopa County Superior Court to review the order of the Commission allowing release of sales funds back to prospective buyers desiring such a release. The parties by their actions, both in the trial court and on appeal, have narrowed the legal issue to whether the Commission has statutory power to order the release of the funds in the manner contemplated. The trial court held the Commission was without such statutory authority and the Commission has appealed.

The only statutory authority relied upon by the Commission for its refund release order is A.R.S. § 44–1878(A), which provides:

"As a condition to registration under this chapter of securities of a speculative nature the commission may by order impose reasonable restrictions and conditions upon the use and disbursement of funds to be derived from the sale of such securities, including impoundment of such funds in a depository satisfactory to the commission, subject to the orders of the commission and to such terms and conditions as to release as the commission deems necessary."

Bionomics argues that this statute permits a release of funds solely to the *registrant* and does not impose in the Commission the power to rescind stock purchases. We agree in part and disagree in part.

■ It is clear that this statute allows the Commission *by order*[2] to impose reasonable restrictions and conditions upon the use and disbursement of funds which are derived from the sale of speculative securities, including the impoundment of such funds.

There is no contention here that the securities offered by Bionomics are not speculative and thus do not fall within the ambit of A.R.S. § 44–1878. Nor is there any contention that the conditions imposed upon the release of these funds are unreasonable, that is, the funds would be held for one year or until the entire issue was sold, whichever first occurred. The sole bone of contention is whether the conditions not being complied with, the use of the words in the statute of "disbursement" and "impoundment" allows the release of funds to someone other than Bionomics, the registrant.

1. The Commission prior to suspension of sales, had authorized the release of $60,134.03 from impound to Bionomics to pay various expenses.

2. Since express statutory authority exists for the Commission to exercise the power granted

by *order*, we need not determine whether the enactment of general regulation was required to carry out the grant of power. *See, Arizona Corp. Comm. v. Palm Springs Utility Co.,* 24 Ariz.App. 124, 536 P.2d 245 (1975).

Bionomics urges that "disbursement" can only mean to the registrant and the purpose of the "impoundment" is to insure that a corporation issuing speculative stock would judiciously utilize the funds obtained and to permit temporal state control over these funds until the issue ceases to be speculative or until the veracity and integrity of the promoters is acknowledged by the Commission. The problem we have with Bionomics' construction of this statute is the question of what happens to the impounded funds if in fact, the registrant completely ceases to exist during the impound period, or the Commission determines that the registrant is not judiciously utilizing the funds, or that the promoters lack veracity and integrity. Under Bionomics' interpretation of this statute the Commission would have authority to refuse to release the funds to the registrant, but could not release them to the prospective purchasers and in essence the funds would lie in impound for eternity or until a legal action was instituted seeking their release. Such a construction is, in our opinion, illogical.

■■■ In construing a statute we must give the words utilized their common meaning. A.R.S. § 1–213; *State Tax Commission v. Peck,* 106 Ariz. 394, 476 P. 2d 849 (1970). We first note that in using the word "disbursement" the statute does not name who, as between the registrant and the prospective purchasers "disbursement" is to be made. We then must look at the word "impoundment" which, as used here, means "to seize and hold in custody . . . ."; "to impound . . . for safekeeping." Webster's New International Dictionary. The logical interpretation of the use of the word "impoundment" as a grant of power to the Commission to exercise authority over funds derived from the sale of speculative securities, is that the

funds will be held in custody for safekeeping. One of the objectives in keeping the funds safe is to protect the purchasers of the speculative stock. We therefore hold that A.R.S. § 44–1878 grants to the Commission the authority to disburse funds held in impound to both the registrant and buyers of speculative stock depending upon the circumstances.

■■■ This does not mean, however, that the Commission, by this statute, has authority in itself to rescind the stock sales. Rather, it has authority to impose reasonable conditions, in the nature of granting an option to *purchasers* of the stock to rescind in the event the registrant does not comply with the terms of the offering.[3] The conditions imposed by the order of the Commission giving rise to the exercise of the option to rescind was that Bionomics complete the sale of the authorized issue within one year. As previously indicated, Bionomics does not contend this condition was unreasonable and we find that the condition on its face to be reasonable. However, the facts as developed may ultimately show that the Commission's order declaring the conditions not met is unreasonable. For example, if 99.9% of the stock issue was sold, declaring the condition not met may be under the facts unreasonable.

■■■ However, Bionomics has a property interest in the funds held in impound of which it cannot be divested without a due process hearing. A.R.S. § 41–1009. In this case, such a hearing was not afforded Bionomics by the Commission prior to the issuance of its order of December 24, 1974, allowing buyers of the stock to rescind and obtain a pro rata refund.

In our opinion, then, the Commission has statutory authority to release funds derived from the sale of speculative securities held

3. We note that Bionomic's Prospectus advised prospective purchasers of its stock that 85% of the net proceeds from sale of the securities would be impounded and that "These funds will not be released from impoundment except upon written order of the Commission."

In our opinion, the logical conclusion to be drawn by prospective purchasers from this language in the Prospectus was that they could rescind the sale and obtain a refund under certain conditions.

in impoundment back to buyers of that stock. However, the Commission must afford the registrant an opportunity to be heard prior to the exercise of such authority.

The judgment of the trial court is reversed and the matter remanded to the trial court with directions to void the Commission's order of December 24, 1974, and remand the matter to the Commission for appropriate hearings to determine whether, under the facts in this case, it should exercise its authority to grant an option to buyers to obtain a refund of the funds in impoundment.

HAIRE, C. J., and EUBANK, J., concur.